Richard G. HATCHER and Ruthellyn Hatcher, Petitioners,

v.

STATE of Indiana BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9112–TA–00065.

Tax Court of Indiana.

Oct. 19, 1992.

Douglas M. Grimes, Gary, for petitioners.

Linley E. Pearson, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Petitioners Richard G. Hatcher and Ruthellyn Hatcher appeal the final determination by Respondent State of Indiana Board of Tax Commissioners (State Board) of the assessed value of their property for 1985, 1986, 1987, and 1988.

ISSUES

I.   Whether the State Board properly determined the area of the building?

II.   Whether the State Board made appropriate corrections to account for items that no longer exist?

FACTS

The Hatchers own land and improvements located at 1900 West Fifth Avenue in Gary.  The primary improvement is an apartment building, which has been in a dilapidated condition since the early 1980s.  This court first addressed the assessment of the Hatchers' property in *Hatcher v. State Board of Tax Commissioners* (1990), Ind.Tax, 561 N.E.2d 852, in which the court found the following pertinent facts:

In July of 1984, the Hatchers boarded up and vacated the apartment building. Soon thereafter persons unknown ransacked the building breaking windows, stealing copper sheathing from the roof, and removing sinks, toilets, carpeting, and other items....

On July 3, 1989, the Hatchers filed a petition for correction of error [Form

133] for the years 1985, 1986, 1987, and 1988. The Hatchers asserted that after 1984 the assessor committed a mathematical error in computing the assessment because the assessment continued to be computed using the 1979 assessed value, instead of a lower value reflecting the damage done to the property in 1984. *Id.* The court remanded the Hatchers' case to the State Board to determine whether corrections could be made pursuant to objective standards for items that were assessed, but could visually be determined not to exist. *Id.* at 858.

On remand, the State Board's hearing officer made corrections in the Hatchers' assessment, including adjustments to account for the lack of interior walls and doors, plumbing fixtures, heating, and lighting. The hearing officer, however, also determined there was an error in the calculation of the area of the building. The area had originally been assessed at 8,610 square feet per floor, but the hearing officer increased the area to 10,921 square feet per floor.

Prior to the Hatchers' previous appeal, the State Board assessed the value of the improvements at $26,400. On remand, the corrections for items that were determined not to exist lowered the assessed value, but the effect of the corrections was offset by the increased area. Thus, the State Board's final determination lowered the assessed value of the improvements to $25,870. The Hatchers now appeal.

Additional facts are introduced below as necessary.

## DISCUSSION AND DECISION

### I.

### STANDARD OF REVIEW

"[T]his court will not overturn a State Board final determination unless the determination is not supported by substantial evidence, is an abuse of discretion, is in excess of statutory authority, or is arbitrary or capricious." *Bailey Seed Farms,*

*Inc. v. State Bd. of Tax Comm'rs* (1989), Ind.Tax, 542 N.E.2d 1389, 1391 (citing *Porter's South Shore Cleaners v. State* (1987), Ind.Tax, 512 N.E.2d 895, 898).

### AREA PER FLOOR

As stated above, on remand the State Board increased the area of the building from 8,610 square feet per floor to 10,921 square feet per floor. To determine the area, the hearing officer testified he drew a sketch of the building, using the diagram from the county property record card and its dimension measurements, albeit rounded, as a guide. During his inspection of the building, the hearing officer took "spot" measurements to verify the accuracy of the measurements from the county property record card. That is, he checked some of the measurements, but did not completely remeasure the building. According to the hearing officer, the county's measurements were correct, but the square footage was miscalculated.

The county property record card indicates the depth of the building to be 112 feet nine inches.[1] *Respondent's Exhibit 2.* The hearing officer, however, determined the building to be 134 feet deep.[2] *Petitioners' Exhibit 5.* The increased depth determined by the hearing officer results in a substantial increase in the area per floor.

As stated above, the court must examine the State Board's final determination of the assessed value of the Hatchers' property under the "substantial evidence" and "arbitrary or capricious" standards.

A finding should be set aside under the substantial evidence standard when it lacks a reasonably sound basis of evidentiary support. *City of Evansville v. Southern Indiana Gas & Electric Co.* (1975), 167 Ind.App. 472, 485, 339 N.E.2d 562, 572. Similarly, an act is arbitrary or capricious when it is without some basis which would lead a reasonable and honest person to the same conclusion as the agency. *State Bd. of Tax Comm'rs v.*

1. $12'6'' + 13' + 10' + 45' + 10' + 22'3'' = 112'9''$.

2. $13' + 13' + 10' + 45' + 10' + 22' + 21' = 134'$.

*South Shore Marina* (1981), Ind.App., 422 N.E.2d 723, 727.

*Bailey Seed Farms,* 542 N.E.2d at 1391.

The hearing officer determined the depth of the building upon the basis of "spot" measurements and an examination of the county property record card. The hearing officer, however, neither measured the lot nor considered its measurements, as shown on the county's property record card, *Respondent's Exhibit 2,* and his own property record card, *Petitioners' Exhibit 5,* both of which state that the lot is only 115 feet wide and 125 feet deep. It does not stretch the court's imagination to conclude that a building 134 feet deep will not fit on a lot that is only 125 feet deep.[3] Accordingly, the court finds that the State Board's final determination of the dimensions and area of the building is unsupported by substantial evidence and is arbitrary and capricious.

## II.

## WINDOWS AND ROOFING

The Hatchers also contend the instructions in the court's prior decision in this case were not followed because the State Board failed to make corrections to reflect missing window glass and roofing. The condition of the windows and roofing is not disputed. The hearing officer testified that all the windows in the building were broken, *Transcript* at 42, and the court's prior opinion notes that sections of the roofing no longer exist, *Hatcher,* 561 N.E.2d at 852. The question is how and whether corrections for these features may be made.

The hearing officer testified that adjustments for missing window glass and roofing are not needed because the condition of these features is accounted for by physical and obsolescence depreciation. *Transcript* at 92. Although damaged and missing features of a building may contribute to the assessor's impression of its condition for purposes of determining physical and obsolescence depreciation, *see* 50 I.A.C. 2–12–2 (repealed),[4] generally there is no prohibition against making additional adjustments for such features.

In the case at bar, however, the State Board asserts its regulations do not provide a mechanism for making adjustments pursuant to objective standards to account for the lack of window glass and roofing. *Transcript* at 43–50, 92. The base price components sub-schedule from 50 I.A.C. 2–5–4 Schedule C breaks down many of the component costs of the interior and mechanical features incorporated into the base rates of the various use type models. Generally, to reflect the lack of a particular component in a given structure, a deduction in the amount of the component cost listed under the base price components sub-schedule is made. For example, "[a] deduction for 'no heating' would be equivalent to the amount shown for 'heating only.'" 50 I.A.C. 2–5–2. Similarly, for apartments, the component costs of certain interior and mechanical features, *i.e.,* partitioning, built-ins, plumbing fixtures, and air conditioning, are determined according to the unit finish adjustments sub-schedule. 50 I.A.C. 2–5–2. The component costs of window openings and roofing, however, are addressed neither by the base price components sub-schedule nor by the unit finish adjustments sub-schedule.

The unit-in-place cost tables contain another possible method for determining the cost of particular components. "Unit-in-place Cost Tables have been included in the Manual to be used as a guide by the appraiser in making both (1) *component-part adjustments to the existing Pricing Schedules;* and (2) complete component-part Replacement Cost Estimates." 50 I.A.C. 2–11–1 (emphasis added). The unit-

---

**3.** The hearing officer's rounding of the measurements from the county property record card to the nearest whole foot resulted in an increase of only three inches in the depth of the building from the county property record card. The court is therefore left to ponder the origin of the additional 21 feet in the depth of the building that the hearing officer found.

**4.** 50 I.A.C. 2, applicable to the years at issue, was repealed, revised, and repromulgated as 50 I.A.C. 2.1. Article 2.1 applies to assessments on or after March 1, 1989. 50 I.A.C. 2.1–1–1.

in-place cost tables provide a host of costs for different materials used to construct windows, *see* 50 I.A.C. 2–11–12, and roofing, *see* 50 I.A.C. 2–11–11.

The base rates used to determine the reproduction cost of commercial and industrial buildings theoretically include the component costs of windows and roofing which are typical of the applicable use type model. 50 I.A.C. 2–5–2. In order to determine a component cost included in the base rate for a particular use type model using the unit-in-place cost tables, it is necessary to know the specifications of such a component for the model. That is, to determine the component cost for windows and roofing in the apartment use type model according to the unit-in-place tables, the particular specifications of the materials used in these components must be known. The regulations in effect during the years at issue do not, however, contain the specifications for windows and roofing in the apartment model use type. *See* 50 I.A.C. 2–5–2.

Because there are no specifications for the component costs of windows and roofing for the apartment use type model, a correction to reflect the lack of such components would require the assessor to use subjective judgment to determine the cost. *See Transcript* at 43–50, 92. Accordingly, a correction to reflect the lack of windows and roofing cannot be made pursuant to objective standards under the applicable regulations, even though these features may visually be determined not to exist in the Hatchers' building. "[T]he only errors subject to correction by Form 133 are those which can be *corrected* without resort to subjective judgment." *Hatcher*, 561 N.E.2d at 857 (emphasis added). The court therefore finds that the State Board's final determination is consistent with the court's prior decision and is neither unsupported by substantial evidence nor arbitrary or capricious with respect to the assessment of the windows and roofing.

The court now REMANDS this case to the State Board to remeasure the building and to determine the proper dimensions, area per floor, and configuration of the building and to calculate the assessed value of the improvements based on these determinations.

The court ORDERS and DIRECTS the State Board on REMAND to afford the Hatchers or their representative the opportunity to be present during the remeasuring.