BARTH, INC., Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

Cause No. 49T10–9701–TA–00086.

Tax Court of Indiana.

Sept. 22, 1998.

Tamatha A. Stevens, McMains, Goodin & Orzeske, Indianapolis, for Petitioner.

Jeffrey A. Modisett, Attorney General, Kathryn Symmes Kirk, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Barth, Inc. (Barth) appeals final assessment determinations of the State Board of Tax Commissioners (State Board) fixing the assessed value of property Barth owns for the 1989, 1990, and 1991 tax years. Barth raises three issues in this original tax appeal. Barth contends that the base rate calculations of the buildings located on the property are incorrect, that the buildings were entitled to a kit adjustment as of March 1, 1991,[1] and that two of the buildings should have been depreciated according to a 30–year life ex-

pectancy table instead of a 40–year life expectancy table.

## FACTS AND PROCEDURAL HISTORY

Barth owns real property in Milford, Indiana. This property consists of two parcels of land and four buildings. On December 20, 1991, Barth filed six Form 133 Petitions for Correction of an Error with the Kosciusko County Auditor. See IND.CODE ANN. § 6-1.1–15–12 (West 1989) (amended 1993, 1995 & 1997). These petitions alleged that an incorrect base rate was applied. These petitions were denied on January 13, 1992. As required by statute, the petitions were forwarded to the State Board.[2] See id. § 6–1.1–15–12(d). A State Board hearing officer, Lynn Leininger met with Barth's authorized representative,[3] Drew Miller of Landmark Appraisals, a property tax consulting firm, to discuss the petitions. In that discussion, Mr. Miller raised issues other than the base rate of the property, namely, the kit adjustment and the 30–year life expectancy table. On November 22, 1996, the State Board issued six separate final determinations in which it denied Barth's request to recalculate the base rate, Barth's request that the buildings be given a kit adjustment, and Barth's request that two of the buildings be depreciated according to the 30–year life expectancy table. This original tax appeal ensued. On December 22, 1997, the parties tried this cause before this Court. Additional facts will be added as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The State Board is given great deference when it acts within the scope of its authority. Accordingly, this Court reverses State Board final determinations only when those determinations are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or

---

1. The kit adjustment was not available for the 1989 and 1990 tax years. See Bock Prods., Inc. v. State Bd. of Tax Comm'rs, 683 N.E.2d 1368, 1372 (Ind.Tax Ct.1997).

2. The General Assembly has changed this statutory provision to require the county auditor to

forward the matter to the county board of review where a correction petition is denied. See IND. CODE ANN. § 6–1.1–15–12(d) (West Supp.1998).

3. See IND ADMIN. CODE tit. 50, r. 4.2–1–7(a) (1996).

exceed statutory authority. *See Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind.Tax Ct.1998).

## Discussion

### I. The Base Rate Calculation

■ The petitions used by the taxpayer in this case were Form 133 Petitions for Correction of an Error, which are governed by IND.CODE ANN. § 6–1.1–15–12 and applicable State Board regulations. This Court has repeatedly held that the Form 133 process "provides an avenue for correcting objective mistakes in an assessment, not errors in subjective judgment." *See, e.g., Bock Prods., Inc.,* 683 N.E.2d at 1370 (collecting cases). Therefore, the only errors that may be corrected on a Form 133 Petition are those that may be corrected without the resort to subjective judgment. *See id.* In each of its final determinations, the State Board rejected Barth's claim that the base rate was calculated improperly on the basis that any "[c]hanges would be subjective in nature." (Joint Exhs. C–1 to C–3 and D–1 to D–3). In the State Board's view, the alleged error was not correctable via a Form 133 Petition; therefore, the State Board did not substantively review Barth's allegation that the base rate was calculated improperly.

The calculation of base rate is an element in calculating the reproduction cost of a given improvement. *See Bock Prods.,* 683 N.E.2d at 1371. The base rate for an improvement is calculated by choosing the model that most resembles the physical characteristics of the subject improvement [4] and then applying the pricing schedule [5] associated with that model to the improvement. *See* IND. ADMIN. CODE

tit. 50, r. 2.1–4–3(a); *Clark,* 694 N.E.2d at 1235; *Wareco Enters. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 1299, 1302 (Ind.Tax Ct.1997); *Bock Prods.,* 683 N.E.2d at 1371. The State Board has recognized that not all improvements will conform exactly to the particular pricing schedule used to assess the improvement. *See Bock Prods.,* 683 N.E.2d at 1371. Consequently, the State Board has provided separate schedules showing the costs of certain components and features in order to allow assessors to adjust the base rate to account for an improvement's deviation from the model used to develop the pricing schedule. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(b)–(e) (1992) (codified in present form at *id.* r. 2.2–10–6.1(b)–(e) (1996)); *Clark,* 694 N.E.2d at 1236 n. 6; *Wareco Enters.,* 689 N.E.2d at 1302; *Bock Prods.,* 683 N.E.2d at 1371; *see also Hatcher v. State Bd. of Tax Comm'rs,* 601 N.E.2d 19, 21–22 (Ind.Tax Ct.1992).

■ One of these schedules, Schedule C, details many of the component costs of the interior and mechanical features contained in the models. In general, where an improvement does not contain a component presumed to exist in the model, and a cost for that component is listed in Schedule C, a deduction from the base rate is made pursuant to that schedule. As this Court has held, these type of base rate adjustments often involve objective determinations [6] or, in other words, an "uncomplicated true or false finding of fact that is correctable via a Form 133." *Bock Prods.,* 683 N.E.2d at 1371 (internal quotation marks and citation omitted). Where the model contains a feature to which a value has been assigned, but that feature

---

4. *See Zakutansky v. State Bd. of Tax Comm'rs,* 696 N.E.2d 494, 496–97 (Ind.Tax Ct.1998); *Clark,* 694 N.E.2d at 1243–44; *Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 373–74 (Ind. Tax Ct.1997), *review granted,* 695 N.E.2d 123 (Ind.1998); *Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113, 1116 (Ind.Tax Ct.1997); *Herb v. State Bd. of Tax Comm'rs,* 656 N.E.2d 890, 893 (Ind.Tax Ct.1995).

5. The pricing schedules contain reproduction cost values calculated on a per square foot basis. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(a) (1992) (codified in present form at *id.* r. 2.2–10–6.1(a) (1996)).

6. As this Court discussed in *Wareco Enterprises,* 689 N.E.2d at 1302, the State Board is required to investigate the claim of error raised by the taxpayer in a Form 133 Petition so that it may determine whether the taxpayer is challenging subjective determinations or objective determinations. Where the State Board decides that the taxpayer is challenging subjective determinations and therefore finds that the use of the Form 133 process is improper, the State Board ought to outline its reasoning in its written findings. This would facilitate judicial review. *See Alte Salems Kirche, Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 810, 814 n. 4 (Ind.Tax Ct.1998).

does not exist in the subject improvement, the value assigned should be subtracted from the improvement's base rate. *See Hatcher v. State Bd. of Tax Comm'rs,* 561 N.E.2d 852, 857–58 (Ind.Tax Ct.1990).

■ In this case, Barth has alleged that the subject improvements lack features presumed to exist in the model,[7] such as a lack of partitioning and a lack of interior finish. (Trial Tr. at 8–9). If these features are not present in the subject buildings and values for these features have been assigned to the buildings, those values must be subtracted.[8] As this Court stated in *Hatcher,* 561 N.E.2d at 857–58, "If a fireplace exists, then it is assessed. If no fireplace exists, then its value can be subtracted from the computation. Similarly, for any item that exists and a value is assigned to that item by the property record card, if the item no longer exists, then the auditor should be permitted to subtract that value, as well." Determining whether certain values that have been assigned should have been subtracted involves a simple observation of fact without resort to subjective judgment. *See Wareco Enters.,* 689 N.E.2d at 1302. Accordingly, the Form 133 Petition is the appropriate method to correct these alleged errors, and the State Board erred in concluding that it was not. Therefore, this issue is REMANDED to the State Board so that it may evaluate Barth's contention that the base rate calculation was erroneous.

## II. The Kit Building Adjustment

In 1991, the State Board amended its regulations to include a 50% reduction in the base rate for certain light pre-engineered or kit-type buildings. Because this amendment occurred during a non-reassessment year, the State Board *ordered* local assessing officials to reassess all improvements that qualified for the 50% reduction. *See* Memorandum from State Board of Tax Commissioners to All Assessing Officials (Feb. 22, 1991), at 2. Later that year, the State Board issued Instructional Bulletin 91–8 to instruct assessors on how to determine which buildings qualified for the reduction. This instruction-

---

**7.** The State Board contended in its brief and at oral argument that Barth did not raise the issues of base rate adjustments at the administrative level. Consequently, in the State Board's view, this Court may not consider them. *See* IND.CODE ANN. § 33–3–5–14 (West 1996); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324 (Ind.Ct.App.1981). In original tax appeals from final determinations of the State Board, this Court must recreate the record of what evidence and issues were presented at the administrative level. *See Dana Corp. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1244, 1248 (Ind.Tax Ct.1998); *Gatling Gun Club,* 420 N.E.2d at 1329. This results from the operation of section 6–1.1–15–6, which requires that the State Board file a transcript of the proceedings before the State Board with this Court. "However, the transcript shall not include the evidence compiled by the board with respect to the proceedings." IND. CODE ANN. § 6–1.1–15–6 (West 1989).

Consequently, the Court is forced to rely on the parties to develop much of the record of what occurred at the administrative level. In this case, Mr. Miller testified that he discussed these issues with Mr. Leininger, the State Board hearing officer. (Trial Tr. at 9). Mr. Leininger testified that he did not recall whether adjustments to the base rate were requested by Mr. Miller. (Trial Tr. at 23).

The Court notes that the State Board did not make a contemporaneous objection to Mr. Miller's trial testimony. *See Indiana Ass'n of Seventh Day–Adventists v. State Bd. of Tax Comm'rs,*

512 N.E.2d 936, 940 (Ind.Tax Ct.1987) ("The court assumes that the same evidence was presented at the administrative hearing since there was no objection to the testimony at trial."). In addition, Mr. Leininger did not directly state that the issue of base rate adjustments was not raised by Mr. Miller. Consequently, the Court is left with Mr. Miller's testimony. Therefore, the Court finds that Barth properly raised the base rate adjustments at the administrative level.

The Court notes that this problem could have been avoided had Mr. Miller taken the time to state specifically what was erroneous about the base rate calculation on the Form 133 Petition. Although this is not required by law, *see Wareco Enters.,* 689 N.E.2d at 1302 n. 3, this may have saved the parties a great deal of time and trouble. The State Board is by no means blameless either. It is well within the authority of the State Board to issue regulations to address the problem of taxpayers raising additional issues at administrative hearings besides those raised in petitions for review. The State Board has chosen not to do so.

**8.** Of course, in order to subtract values that have been assigned, it is necessary to have values assigned in the first place. Where there is no value assigned to a component by any of the base rate adjustment schedules, the assessor will have to correct for a lack of that component by resorting to subjective judgment. On this point, see *Hatcher,* 601 N.E.2d at 21–22.

al bulletin provides examples of kit buildings and outlines several characteristics of these buildings. *See generally King Industrial Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338 (Ind.Tax Ct.1998) (describing Instructional Bulletin 91–8).

As was foreseeable, taxpayers and local assessing officials did not always see eye-to-eye on whether a particular improvement qualified for the kit adjustment. Where the local assessing officials did not reassess the improvements, many taxpayers appealed their assessments by filing either a Form 130 Petition for Review of Assessment [9] with a County Board of Review or a Form 133 Petition for Correction of an Error with the County Auditor. On August 28, 1992, the State Board issued Instructional Bulletin 92–1,[10] which provides guidance on handling these petitions.

■ Instructional Bulletin 92–1 states:

Taxpayer files Form 133 on a structure that qualifies for the [kit] adjustment.

The assessment is correct because the assessor applied a low Grade and Design Factor to account for the lower cost of construction. The assessing officials should deny the Form 133 Petition for Correction of [an] Error based on the rationale that there is no error to correct.[11]

In its final determination, the State Board denied the kit adjustment for the buildings at issue on this basis. In this case, two of the buildings alleged to qualify for the kit adjustment had already received a D grade, and the remaining two buildings received a C–2 grade.[12] Therefore, the State Board concluded that there was no error in the assessment and did not reach the issue of whether the buildings qualified for the kit adjustment.

At trial, the parties spent a great deal of time trying to show whether the buildings at issue were or were not kit buildings. This was premature. *See 20th Century Fiberglass v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1376, 1378 (Ind.Tax Ct.1997). In its

9. *See* IND.CODE ANN. § 6–1.1–15–1 (West Supp. 1998).

10. Instructional Bulletin 92–1 stated that in situations where the taxpayer filed a Form 130 Petition, the taxpayer was to be instructed to file a Form 133 Petition instead. The State Board's choice of the Form 133 process is puzzling indeed. The Form 133 Petition is used to correct objective errors in assessments. *See Franchise Realty Corp. v. State Bd. of Tax Comm'rs*, 682 N.E.2d 832, 834 (Ind.Tax Ct.1997); *Bender*, 676 N.E.2d at 1116; *Hatcher*, 561 N.E.2d at 857. It therefore follows that the State Board has deemed the qualification of a building for a kit adjustment to be an objective determination, i.e., one capable of being made without resort to subjective judgment. *See Hatcher*, 561 N.E.2d at 857. This is surprising given the vague guidance assessors receive for determining the qualification of a building for a kit adjustment. *See King Industrial Corp.*, 699 N.E.2d at 339–40 n. 3, 341–42. As this Court noted in *King Industrial Corp.*, Instructional Bulletin 91–8 gives assessing officials wide discretion in determining whether a building qualifies for the kit adjustment. This would seem to be inconsistent with the State Board's choice of the Form 133 process. However, in deference to the State Board's expertise in these matters and its authority to regulate appeals to the State Board, the Court accepts the State Board's conclusion that the qualification of an improvement for a kit adjustment is an objective determination.

The State Board's choice of the Form 133 process for kit adjustment appeals may be the result of a shift in policy. If that is the case, the State Board ought to publish notice of this change in policy so as to advise taxpayers, the legislature and this Court of the change. This is doubly important because the case law developed by this Court on this issue stems largely from *Hatcher*, the seminal case in this area. *Hatcher* was largely based on State Board Instructional Bulletin 84–7. If the policy expressed in Instructional Bulletin 84–7 has changed, perhaps the Court will have to reexamine cases dealing with Form 133 Petitions.

11. This statement begs the question of whether the particular lower grade selected by the assessor accurately reflects the lower cost of constructing the building and is the apotheosis of ipsedixitism. The State Board has no way of knowing a priori whether the grades given by local assessors adequately accounted for the lowered reproduction cost associated with buildings qualifying for the kit adjustment in each case.

12. Buildings are graded according to the quality of their overall workmanship, materials, design, and, at times, their conformance to the pricing schedule used to calculate the reproduction cost of the particular building being assessed. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992) (codified in present form at *id.* r. 2.2–10–3(a) (1996)); *see also King Industrial Corp.*, 699 N.E.2d at 342 n. 11; *Zakutansky*, 696 N.E.2d at 496 & n. 5; *Clark*, 694 N.E.2d at 1235–38 & n. 6; *cf. Componx, Inc. v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1372, 1375 (Ind.Tax Ct.1997).

final determination, the State Board never reached the issue of whether the buildings qualified for the kit adjustment because it found the fact that the buildings had already received a lower grade dispositive. Because the factual determination of whether the buildings qualified for the kit adjustment was not made by the State Board, the Court is in no position to review whether the buildings qualified for the adjustment unless the determination can be made as a matter of law. *See Alte Salems Kirche, Inc.*, 694 N.E.2d at 815–16 n. 6; *20th Century Fiberglass*, 683 N.E.2d at 1378. Not surprisingly, the evidence presented at trial does not allow the Court to resolve this issue as a matter of law. Accordingly, the State Board's final determination may only be upheld if the Form 133 Petition was properly denied on the basis that the buildings had already received a lower grade.

Under the State Board regulations, a building must be given a kit adjustment if it qualifies for that adjustment. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–5 Schedules A1 and A2 ("Deduct 50% of base price (1st floor) for pre-engineered kit-type structure."); *King Industrial Corp.*, 699 N.E.2d at 342 [13] (Where the improvement qualifies for the kit adjustment, the application of the kit adjustment is mandatory, not discretionary.). *Cf. Zakutansky*, 696 N.E.2d at 497 ("The taxpayer is entitled to have his property assessed using the correct cost schedule. Only after this is done may adjustments for quality be made."). Instructional Bulletin 92–1 conflicts with this regulation. *See State Bd. of Tax Comm'rs v. Two Market Square Associates*, 679 N.E.2d 882, 886 (Ind.1997) (agency's interpretation of its own regulation given great weight unless it is inconsistent with regula-

tion itself). In essence, Instructional Bulletin 92–1 treats the kit adjustment as discretionary in certain cases. This is incorrect. The plain language of the regulation admits of no exceptions and requires the kit adjustment to be given where the building qualifies for the adjustment, whether local assessing officials have previously decided to give the building a lower grade or not. Accordingly, the Court holds that the State Board erred when it refused to consider whether the buildings at issue qualified for the kit adjustment.

The Court's conclusion is buttressed by an examination of the results that would ensue were the Court to follow State Board's interpretation of the regulation. In its memorandum of February 22, 1991 to assessing officials, the State Board ordered local assessing authorities to reassess *all* buildings that qualified for the kit adjustment. *This includes buildings that were already given a lower grade to account for the lower construction cost.* However, the State Board, relying on Instructional Bulletin 92–1, proposes different treatment for buildings that qualify for the kit adjustment, were given a lower grade, but were not reassessed by local assessing authorities. The State Board seeks to deny kit adjustments in these cases by foreclosing a taxpayer's right to appeal.

This will not do. A taxpayer's right to appeal a specific error in an assessment should not be at the mercy of inaction by local assessing officials.[14] *See Zakutansky v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1365, 1368 (Ind.Tax Ct.1998). Adherence to the State Board's position would make the failure of a local assessing official to give a kit adjustment to buildings, which have already

---

13. In *King Industrial Corp.*, 699 N.E.2d at 342, this Court noted that the kit adjustment should be a means to an end, i.e., a means to arrive at the correct assessment for a particular building. (This assumes that under the True Tax Value system an assessment that is objectively verifiable as correct is an attainable goal.) The drafting of Instructional Bulletin 91–8 with few, if any, hard and fast rules would be consistent with making a kit adjustment a discretionary means for assessors to arrive at correct assessments. However, once it is determined that the kit adjustment is applicable, the regulation admits of no discretion as to its applicability.

14. It does seem strange that the State Board would argue that an application of the regulations depends on how local officials have assessed the property before. On a related point, the State Board's argument violates the cardinal principle that each tax year stands on its own. *See Kent Co. v. State Bd. of Tax Comm'rs*, 685 N.E.2d 1156, 1159 (Ind.Tax Ct.1997), *review denied*. Where a taxpayer challenges an assessment, the resolution of that challenge does not depend on how the property was previously assessed.

received a lower grade, unreviewable.[15] This is contrary to the State Board's statutory duty to review the actions of local assessing officials. *See id.* at 1368–69; *see also Joyce Sportswear Co. v. State Bd. of Tax Comm'rs,* 684 N.E.2d 1189, 1191 (Ind.Tax Ct.1997), *appeal dismissed.* The Court is aware of the enormous burden borne by the State Board in administering the property tax system of this State. *See Harrington v. State Bd. of Tax Comm'rs,* 525 N.E.2d 360, 363 (Ind.Tax Ct.1988). However, the State Board may not lighten its load by foreclosing review of these assessments.

As additional support for its position, the State Board strenuously argues that awarding the kit adjustment in this case will result in a windfall for the taxpayer because the grade of the buildings, which may have been lowered to account for the decreased construction cost,[16] now cannot be changed. This, the State Board argues, results from the fact that the taxpayer's Form 133 Petition, which may only be used to correct objective errors, may not be used to change the lower grade (a subjective determination, *see Reams v. State Bd. of Tax Comm'rs,* 620 N.E.2d 758, 760 (Ind.Tax Ct.1993)) already given to the buildings at issue.[17] *See Hatcher,* 561 N.E.2d at 857. In *Hatcher,* this

Court held that the State Board could not correct a subjective error not raised by the taxpayer that the State Board discovers when reviewing a Form 133 Petition. In so holding, this Court invalidated a State Board regulation adopted in 1988 that provides: "If a taxpayer files a petition for correction of error (Form 133) (50 IAC 4.2-2-9) with respect to a ... real ... property assessment, they [sic] open that entire assessment to review." IND. ADMIN. CODE tit. 50, r. 4.2-3-12 (1996).

The State Board's argument is not well-taken because it was the State Board that created the problem faced by the Court today. The State Board chose the Form 133 process as the appropriate vehicle for taxpayers to challenge a denial of a kit adjustment.[18] Now the State Board asks this Court to limit *a taxpayer's* right to challenge an assessment based on limitations on the *State Board's* authority to correct assessments when the State Board reviews a Form 133 Petition. The State Board has tied its own hands and expects the Court to bind the taxpayer with the same rope. However, a taxpayer's right to allege errors on a Form 133 Petition is in no way linked to the State Board's authority to correct errors *other than those raised by the taxpayer.*[19] The

15. Had the State Board simply issued a regulation that provided that where a building had already received a lower grade, a kit adjustment was not warranted, this might be a different case. In this case, because the State Board ordered *all* kit-type buildings reassessed, some buildings that already had a lower grade received the adjustment. Barth has a right to have the State Board determine whether its buildings qualified for the kit adjustment despite the fact that they had already received a lower grade because other buildings were given a kit adjustment despite the fact that they had already received a lower grade. In addition, the State Board's position in this case raises concerns about uniformity and equality. *See* IND. CONST. art. X, § 1. However, because Barth has chosen not to raise this issue, the Court declines to discuss it.

16. The record does not reflect why two of the subject buildings were assigned a D grade and the other two were assigned a C-2 grade.

17. In its brief, the State Board states, "Grade is the critical factor in Barth's argument, and grade cannot be adjusted through these [Form] 133 appeals." (State Bd. Post-Trial Br. at 18). The

Court agrees with the State Board's premise that the kit adjustment and grade are linked. *See King Industrial Corp.,* 699 N.E.2d at 340–41. However, it must be remembered that Barth does not challenge the grade of the subject buildings in this original tax appeal. Rather, it is the State Board that has injected the grade issue into this case.

18. The Court notes that as a matter of historical fact taxpayers have used the Form 130/131 process to challenge the denial of a kit adjustment. *See, e.g., King Industrial Corp.,* 699 N.E.2d at 339.

19. It is true that, under this Court's decisions, the determination of whether an error alleged by a taxpayer is subjective or objective depends on whether the correction of the alleged error requires the assessor's subjective judgment. *See Franchise Realty Corp.,* 682 N.E.2d at 835. In this case, the alleged error is the denial of the kit adjustment. The mere fact that the correction of this alleged error may create another error that requires resort to subjective judgment to correct does not alter the fact that the error alleged by Barth is objective. The State Board has con-

issue here is not the scope of the State Board's authority to correct an error in an assessment that was not raised by the taxpayer when a taxpayer files a Form 133 Petition, but rather what errors may be raised by a taxpayer in a Form 133 Petition.

Besides the fact that the State Board's argument erroneously predicates the taxpayer's right to use the Form 133 process on the State Board's ability to correct errors not raised by the taxpayer when the State Board reviews a Form 133 Petition, the State Board's argument fails for another reason. As previously noted, the State Board chose the Form 133 process for kit adjustment appeals. Therefore, the State Board cannot be heard to complain where a taxpayer uses the very process the State Board has chosen. To allow the State Board to do so would upset the legitimate reliance interests of taxpayers.

The Court does acknowledge the State Board's concern about a taxpayer receiving a windfall based on the State Board's inability to correct the grade of an improvement when a taxpayer files a Form 133 Petition challenging a denial of a kit adjustment. *Cf. Kent Co.*, 685 N.E.2d at 1161. Where a taxpayer receives a windfall, that taxpayer does not bear its fair share of the tax burden. If it is possible to do so consistent with the law, this situation is to be avoided.

If the buildings in this case qualify for the kit adjustment, then, in order to arrive at the correct assessment of those buildings, the grading of those buildings will likely require revision. Therefore, the kit adjustment and the grading of the buildings, though discrete issues, are inextricably linked. Where a taxpayer alleges that its building qualifies for the kit adjustment, the allegation itself, as a purely practical matter, puts the grade assigned to the building at issue. Consequently, it would be nonsensical to refuse to allow the State Board to adjust the grade of the buildings if the kit adjustment is determined to be warranted. *Cf. King Industrial Corp.*, 699 N.E.2d at 340–41 (goal of entire assessment process is to arrive at correct assessments).

This Court's decision in *Hatcher* does not require a different result. In *Hatcher*, this Court did not deal with the issue arising when the correction of an objective error in an assessment creates a subjective error in the assessment. For that reason, it does not control the outcome here. *Hatcher* was concerned about the expansion of the State Board's authority beyond that granted under section 6–1.1–15–12 to include conducting a complete reassessment of the subject property. *But cf.* IND.CODE ANN. § 6–1.1–15–4(a) (West Supp.1998); *Joyce Sportswear*, 684 N.E.2d at 1191.

The same concerns are not present in this case. Here, assuming that the failure to grant a kit adjustment to the subject buildings was erroneous, the correction of that objective error will almost certainly cause an error in the grading of the buildings. The error in grade merely derives from the correction of the objective error. This is a vastly different situation from the situation where State Board attempts to open an entire assessment for review simply because a taxpayer seeks the correction of an objective error.

For the reasons stated above, this issue is REMANDED to the State Board for further consideration so that the State Board may examine whether the buildings at issue qualify for the kit adjustment. If the State Board decides that the kit adjustment is warranted, the State Board may adjust the grades of the buildings that qualify for the kit adjustment as of March 1, 1991.

### III. The 30–year Life Expectancy Table

■ In its final determinations, the State Board concluded that Barth's allegation that two of the buildings at issue, though fire-resistant, should have been depreciated according to the 30–year life expectancy table instead of the 40–year life expectancy table could not be corrected via a Form 133 Petition because, in the State Board's view, resolution of that issue would require subjective judgment. Therefore, the State Board did not examine the substantive question of whether the buildings should have been

fused the correction of an error in an assessment

with the correction of the entire assessment.

depreciated according to the 30–year life expectancy table.

The State Board's regulations recognize that physical depreciation causes improvements to experience a loss in value. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.* r. 2.2–10–7 (1996)); *Wareco Enters.*, 689 N.E.2d at 1302. Accordingly, the State Board's regulations contain life expectancy (depreciation) tables by which an assessor calculates the effect of the improvement's condition and age on its value. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1. Light pre-engineered buildings are depreciated according to the 30–year life expectancy table, and fire-resistant buildings, *not listed elsewhere,* are depreciated according to the 40–year life expectancy table. *See id.* Therefore, a light pre-engineered building that is also fire-resistant is depreciated according to the 30–year life expectancy table. *See Wareco Enters.*, 689 N.E.2d at 1303.

In *Wareco Enterprises,* this Court found that the State Board's refusal to apply the 30–year depreciation table to a structure conceded to be a light pre-engineered building was contrary to law. This case is different. There is a factual issue concerning whether the buildings at issue are light pre-engineered buildings. If, as Barth contends, the buildings at issue qualify for the kit adjustment,[20] then they would also automatically qualify for the 30–year life expectancy table, thus making the use of the 40–year life expectancy table erroneous. This error would be correctable on a Form 133 Petition because it would require an uncomplicated application of the State Board regulation. *See Wareco Enters.*, 689 N.E.2d at 1302–03; *see also 20th Century Fiberglass,* 683 N.E.2d at

1379; *Rott Devel. Co. v. State Bd. of Tax Comm'rs,* 647 N.E.2d 1157, 1160 (Ind.Tax Ct.1995). Therefore, if on remand, the State Board finds that the subject buildings qualify for the kit adjustment, the State Board must depreciate the buildings according to the 30–year life expectancy table.

However, a problem arises if one or both of the buildings alleged to qualify for the 30–year life expectancy tables are pre-engineered, but do not qualify for the kit adjustment. *See Componx,* 683 N.E.2d at 1374 (Not all pre-engineered buildings qualify for the kit adjustment.). The question is whether the determination that a building is pre-engineered involves subjective judgment on the part of the assessor. The Court has previously found that it does: "The application of the correct Life Expectancy Table is an objective computation after the *subjective determination* of the structure type[21] and condition." *20th Century Fiberglass,* 683 N.E.2d at 1379 (emphasis added). Therefore, if the subject buildings do not qualify for the kit adjustment, no alleged error in the application of the life expectancy tables may be corrected.

## CONCLUSION

For the foregoing reasons, this cause is REMANDED to the State Board for further consideration not inconsistent with this opinion.

**20.** Buildings that qualify for the kit adjustment are, by definition, light pre-engineered buildings.

**21.** This begs the question of why the determination of whether an improvement qualifies for the kit adjustment is objective and the determination of structure type is a subjective determination. The less-than-satisfactory answer is that the State Board has provided guidance concerning kit adjustments and has deemed that guidance (by way of its choice of the Form 133 process for kit adjustment appeals) to be sufficient to make the question of whether an improvement qualifies for

the kit adjustment an objective determination. The State Board has not provided sufficient guidance on the determination of an improvement's structure type to make that determination an uncomplicated true or false finding of fact.

The Court is aware that kit buildings, by definition, are a subset of pre-engineered buildings. This, however, does not alter the Court's conclusion that the determination of whether an improvement is pre-engineered is subjective. The subset of improvements that are pre-engineered, yet do not qualify for the kit adjustment, has not been defined with adequate precision so as to make the determination of which improvements fall into that subset an objective determination.