ALCOILS, INC., Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

Nos. 49T10–9606–TA–69, 49T10–9606–TA–71.

Tax Court of Indiana.

April 7, 2000.

Curtis Dickinson, David Pippen, Dickinson & Abel, P.C., Indianapolis, Indiana, Attorneys for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Laureanne Nordstrom, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

The petitioner, Alcoils, Inc. (Alcoils) in Cause No. 49T10–9606–TA–69 (the Form 133 appeal) asks this Court to review three Form 133 Petitions for Correction of Error that were allegedly filed but never received by the State Board of Tax Commissioners (State Board) for the 1989, 1990 and 1991 tax years. On those forms, Alcoils alleged that an incorrect base rate was applied to its building. (Trial Tr. at

12.) Alcoils also claimed that it was erroneously assessed for certain heating, interior partitioning and windows that it did not possess. (Trial Tr. at 14.) In Cause No. 49T10–9606–TA–71, (the Form 131 appeal), Alcoils appeals a final determination of the State Board made on Alcoils' Form 131 Petition for Review of Assessment that Alcoils submitted for the 1992 tax year. In its final determination, the State Board denied Alcoils certain adjustments for grade and obsolescence depreciation on its property. (Resp't. Ex. B.) For the reasons explained below, the Court affirms the State Board in the 133 appeal and affirms in part and reverses in part the State Board's final determination in the 131 appeal, remanding it for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Alcoils' property is located in Whitley County, Indiana where it makes wire coils for use in electric motors. On December 11, 1991, Alcoils mailed its Form 133 petitions via certified mail to the Whitley County Auditor. On December 12, 1991, a deputy auditor signed for and received delivery of a certified mail envelope and receipt, on which was the notation "Alcoils." This envelope that supposedly contained the 133 petitions was subsequently lost, and was never found, despite a search performed by both the Whitley County Auditor and Assessor. Thus, the Whitley County Board of Review (BOR) never acted upon Alcoils' Form 133 petitions. Thereafter, on June 19, 1996, Alcoils filed its original tax appeal for this case. After having filed the Form 133 appeal, the State Board sent Alcoils a letter on April 15, 1997, in which it claimed to have no record of Alcoils' Form 133 petitions having been filed. (Resp't. Ex. 2.)

With respect to the Form 131 appeal, the pertinent facts are as follows. On

October 6, 1992, the Whitley County BOR made no change to the alleged errors asserted in Alcoils' Form 131 petition. Thereafter, Alcoils appealed this decision to the State Board, which held a hearing on January 16, 1996. On May 10, 1996, the State Board issued its final assessment determination, which granted most of Alcoils' proposed relief. However, the State Board declined to lower the grade assigned to Alcoils' building and did not grant Alcoils any obsolescence depreciation for its property. On June 19, 1996, Alcoils filed its original tax appeal in the Form 131 case. Both causes were tried together by the Court on April 28, 1997, and oral arguments were heard from both parties concerning these cases on September 25, 1997.[1] Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

The State Board is given great deference when it acts within the scope of its authority. *See Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 801 (Ind. Tax Ct.1998). Accordingly, this Court reverses State Board final determinations only when those determinations are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *See id.* at 801–02.

### Discussion

#### 1. The Form 133 appeal

Alcoils argues that the State Board's inaction on its Form 133 petitions constitutes a final assessment determination that is appealable to this Court. In this case, Alcoils claimed that the State Board did not possess the authority to dismiss its claim, wherein the taxpayer allegedly filed three Form 133 petitions with the Whitley County Auditor via certified mail that were

---

**1.** Although these cases were never formally consolidated, the parties have treated the cases as such.

never located. The State Board contends first that the forms were never filed properly and second that, even if the forms were filed properly, the Court still does not possess jurisdiction to hear the case because there has been no final assessment determination made by either the BOR or the State Board.

### A. Proper Filing

In *Indiana Sugars v. State Board of Tax Commissioners*, 683 N.E.2d 1383 (Ind.Tax Ct.1997), the taxpayer filed its petition for the Enterprise Zone Business Personal Property Tax Credit (EZ Credit) for the 1993 tax year via first class mail, which was never received by the Lake County Auditor. There, the Court pointed out that no statutes exist that deal with filing procedures of the State Board.[2] However, the Court found that such statutes do exist for the Department of Revenue (Department), so the Court drew an analogy between the two agencies with respect to filing procedures.[3] *See id.* at 1385. Applying the Department's statutes, the Court reasoned that the Department considers a document filed if it is deposited in the United States mail before the filing deadline. *See id.* at 1386 (citing IND.CODE ANN. § 6–8.1–6–3(b)).

In *Indiana Sugars*, the Court stated that if the above-drawn analogy applies to the State Board, then it appears that certified mail constitutes an appropriate filing method. *See* IND.CODE ANN. § 6.8.1–6–3(b) (stating that filing a document with the Department by first class or certified mail is acceptable.) "It would seem unjust to require more than filing via First Class U.S. Mail.... To now require otherwise might set a technical trap for ... taxpayers. Until such time as statutes are enacted or regulations promulgated requiring

more, mailing forms to the State Board via First–Class Mail constitutes filing." *Id.* at 1386. The Court further discussed what evidence was needed to prove timely mailing. "This Court believes that the sworn testimony of a witness constitutes sufficient evidence to prove timely mailing." *Id.* at 1387.

■ In the present case, Alcoils' tax representative, Mr. M. Drew Miller of Landmark Appraisals testified that he mailed Alcoils' Form 133 petitions, along with a cover letter requesting a date stamp and return receipt, on December 11, 1991. (Trial Tr. at 10.) The record reflects that on December 12, 1991, a deputy auditor in the Whitley County Auditor's office signed for the certified mail envelope. (Trial Tr. at 75.) At the top of the certified mail receipt was the notation "Alcoils," which presumably referred to the taxpayer in this case. (Pet'r. Ex. A).[4] Following receipt of the envelope, it was lost within the Whitley County Auditor's office. After a search was performed of both the Whitley County Auditor's and Assessor's offices, neither the forms nor the cover letter were located. (Trial Tr. at 74).

In support of Alcoils' position, Mr. Miller testified as to the procedures Landmark Appraisals employs when preparing certified mail. (Trial Tr. at 42.) According to Mr. Miller, the postage was applied to the envelope after weighing it. (Trial Tr. at 42.) In addition, Mr. Miller opined that since the postage on the envelope was $0.52, it could not have been empty. (Trial Tr. at 42.) Miller concluded that the only documents in the envelope were the Form 133 petitions. (Trial Tr. at 41.) Miller's testimony leads this Court to conclude that, based on *Indiana Sugars*, Alcoils timely filed its Form 133 petition. Pursu-

---

**2.** The Court also notes that no statutes or regulations delineate filing procedures with the BOR.

**3.** Filling statutes for the Department can be found at IND.CODE ANN. §§ 6–8.1–6–3(a)(1) and 3(b) (West 1989).

**4.** The record does not reflect who made the notation. However, a lack of such evidence does not affect the Court's decision.

ant to *Indiana Sugars,* a taxpayer merely needs to file via first class mail. The Court finds that the Form 133 petitions were properly filed.

### B. Jurisdiction

■ The legislature has stated that if a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, this Court does not have jurisdiction to hear the appeal. *See* IND.CODE ANN. § 33–3–5–11(a) (West 1989 & Supp. 1999). In addition, the Court has stated the need for a taxpayer to exhaust his administrative remedies before filing an original tax appeal. *See Montgomery v. State Bd. of Tax Comm'rs,* 708 N.E.2d 936, 937 (Ind.Tax Ct.1999) (observing that exhaustion of remedies is generally required before a court may exercise jurisdiction over matter conferred to a state agency). In addition, the State Board may not cure a failure on the part of lower taxation authorities to comply with the statutory prerequisites of a valid assessment by way of its ability to correct any assessment error in taxpayer-initiated petitions. *See Joyce Sportswear Co. v. State Bd. of Tax Comm'rs,* 684 N.E.2d 1189, 1192 (Ind.Tax Ct.1997).

■ The Indiana Supreme Court recently addressed this issue in two companion cases. In *State Board of Tax Commissioners v. Mixmill Manufacturing Co.,* 702 N.E.2d 701 (Ind.1998), the Indiana Supreme Court held that when the BOR fails to act upon a taxpayer's Form 131 petition, this Court has no jurisdiction to hear the case. "The Tax Court does not have jurisdiction to hear a direct appeal by a taxpayer against the State Board of Tax Commissioners when a County Board of Review fails to act on a Petition for Review

of Assessment within the statutory time frame." *Id.* at 706. The Supreme Court did state that taxpayers may bring a mandamus action in a court of general jurisdiction to compel the BOR to act on the petition. *Id.* at 705.[5]

The Indiana Supreme Court reached the same conclusion as to Form 133 petitions in *State Board of Tax Commissioners v. L.H. Carbide Corp.,* 702 N.E.2d 706 (Ind. 1998). In facts similar to the case at bar, the Supreme Court held in *L.H. Carbide* that when a BOR fails to act on a taxpayer's Form 133 petition, the Tax Court does not have jurisdiction to hear the case. *See id.* at 707. As in *Mixmill,* the Court stated that a taxpayer may bring a mandamus action in a court of general jurisdiction against the county officials to compel action on the petitions.[6] *See id.*

■ Although the Court finds that Alcoils timely filed its Form 131 petitions, based on the holdings of the above-cited cases, the Court agrees with the State Board that the Court does not possess jurisdiction to hear the case at bar, since the BOR has not acted upon Alcoils' Form 133 petitions. The Court now dismisses Alcoils' Form 133 case for lack of jurisdiction.

### 2. The Form 131 appeal

■ Alcoils also appeals the State Board's final assessment determination regarding the grade and obsolescence of Alcoils' building for the 1992 tax year. In its Form 131 petition, Alcoils argued that its property should have been given a C rather than a B grade. Alcoils also claimed that its building suffers from forms of functional and economic obsolescence and

---

5. BLACK'S LAW DICTIONARY 973 (7th ed.1999) defines a mandamus as "A writ issued by a superior court to compel a lower court or a government officer to perform mandatory or purely ministerial duties correctly." *See also Rader v. Burton,* 234 Ind. 299, 122 N.E.2d 856, 857 (1954)

6. These cases are not to be confused with IND.CODE ANN. § 6–1.1–15–4(e)(1) (West 1989

and Supp.1999), which states that a failure by the *State Board,* not the BOR, to act upon a determination within 180 days shall be treated as a final determination. In these cases, this Court possesses jurisdiction, since the statute treats the State Board's inaction as a final assessment determination. *See id.*

was therefore entitled to a 10% obsolescence adjustment.[7]

## A. Grade

■ Alcoils argues that the grade on its property should be lowered to a C from a B. According to Alcoils, its building was constructed of average materials that would warrant a C grade. The State Board claims that the grade was proper because, although Alcoils' building qualified for and received a kit adjustment, the building was of above-average construction.[8]

Buildings are graded according to the quality of their overall workmanship, materials and design. *See Barth, Inc.*, 699 N.E.2d at 808, n. 12. The regulations state that a C grade is given to a moderately attractive building that conforms with the base specifications used to develop the pricing schedule. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–3(f) (1992) (codified in present form at *id.*, r. 2.2–10–3(a)(3) (1996)). A grade of B is given to an architecturally attractive building with good quality materials and workmanship throughout. *See id.* (codified in present form at *id.*, r. 2.2–10–3(a)(2) (1996)).

■ The State Board raised the grade of Alcoils' building from a C to a B to account for Alcoils' use of above-average materials in its building. The Court notes that slight additions to the basic kit model can be accounted for by simply raising the grade. *See Componx v. State Bd. of Tax Comm'rs*, 683 N.E.2d 1372, 1375 (Ind.Tax Ct.1997). This can be done because none of the variations affects the actual structure of the building itself. *See id.* They are simply cosmetic features that enhance the buildings' aesthetic value, not its structural integrity. *See id.* Most improvements, including kit buildings, will contain some degree of customization. *See Barker v. State Bd. of Tax Comm'rs*, 712 N.E.2d 563, 570 (Ind.Tax Ct.1999). As a result, the fact that an improvement has some degree of customization, without more, is insufficient to disqualify an improvement for a kit adjustment. *See id.* at 570. A kit building can, however lose its status as such if it displays such extant characteristics that the structure could no longer be considered economical. *See id.*

Alcoils claims that the materials used in construction of its kit building were not of good quality. (Trial Tr. at 18.) In support of this, Miller testified that, "There isn't much more to tell. It's, I think, clear that it's not an architecturally attractive building, and it's not built with good-quality materials and workmanship." (Trial Tr. at 36.) Miller also stated that, "The kit-type portion of the property can in no way be described as a B grade ... under the current pricing, a C grade more accurately reflects the quality of workmanship and materials." (Trial Tr. at 36.) Alcoils presented no other evidence on this point. In response, the State Board argued that the grade was raised because Alcoils' building had been enhanced beyond a basic kit building. (Trial Tr. at 54.)

The Court finds that Alcoils' evidence is not enough to overcome the State Board's final determination on this issue. "Where a taxpayer alleges that its building qualifies for the kit adjustment, the allegation

---

7. The Court notes that Alcoils made little mention of economic obsolescence both in its Brief and at trial and made no mention of it all to the State Board during the administrative hearing. (Trial Tr. at 37.) In *Clark v. State Board of Tax Commissioners*, 694 N.E.2d 1230 (Ind.Tax Ct.1998), the Court determined that a taxpayer must identify and quantify obsolescence depreciation. Since this case is pre-*Clark*, however, Alcoils was only required to identify forms of economic obsolescence, which it failed to do. *See id.* at 1241. Thus, the Court will not consider its claim as regards economic obsolescence.

8. The State Board classified Alcoils' building as a kit building, which entitled Alcoils to a 50% reduction in its base rate. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–5 (1992) (Schedules A1 and A2) (codified in present form at *id.*, r. 2.2–11–6 (1996)); *see also Whitley Prods. Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1121 (Ind.Tax Ct.1998).

itself ... puts the grade assigned to the building at issue. Consequently, it would be nonsensical to refuse to allow the State Board to adjust the grade of the buildings if the kit adjustment is deemed to be warranted." *Barth, Inc.,* 699 N.E.2d at 807. In this case, the State Board awarded Alcoils a kit adjustment, but raised the grade to compensate for the modifications. Alcoils was required to present probative evidence in support of this contention, which it failed to do. *See Whitley Prods. v. State Bd. of Tax Comm'rs,* 704 N.E.2d at 1119. (taxpayer must offer probative evidence concerning the alleged error). Thus, the Court will uphold the State Board's final determination on this issue.

### B. Obsolescence

Alcoils claims that it should have been awarded a 10% obsolescence factor on its building. In support of this, Alcoils presents the State Board's final assessment determination of a similar property owned by Universal Coop (Universal) as well as testimony from Miller identifying the various forms of obsolescence present in its building.

### 1. Universal Coop's property

■■■■ Alcoils claims that its property was assessed incorrectly when compared to Universal's property. The Court notes that it is the State Board's duty to assess similar properties consistently. *See Western Select Properties, L.P. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1075 (Ind. Tax Ct.1994). However, Alcoils must present a prima facie case showing that the two assessments were inconsistent. *See id.* at 1074. The taxpayer also has the duty to bring forth evidence of probative value to the State Board showing that similar properties have been treated inconsistently. *See North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 771 (Ind.Tax Ct.1997).

At trial, Alcoils admitted that while excessive wall height was at issue in Universal's building, such problems did not exist in Alcoils' building. (Trial Tr. at 39.) Alcoils also admitted that while Universal's building suffered from corrosion, its property did not. (Trial Tr. at 40.) In support of its position, Alcoils claimed that both buildings were priced as light manufacturing buildings with similar-type industrial uses. (Trial Tr. at 39.) Alcoils also stated that the two properties suffered similar causes of obsolescence. (Trial Tr. at 39.) Alcoils failed, however, to provide more detail as to these claims. .

■■■ Such bare allegations do not constitute the prima facie case needed to trigger the State Board's duty to refute the taxpayer's evidence. *See Herb v. State Bd. of Tax Comm'rs,* 656 N.E.2d 890, 893 (Ind.Tax Ct.1995) ("Allegations, unsupported by factual evidence, remain mere allegations.") Based on this evidence alone, Alcoils has not proven how the properties were similar. "A taxpayer who does not present evidence of similar properties assessed differently cannot complain to this Court that the State Board failed to consider similar properties." *North Park Cinemas,* 689 N.E.2d at 771–72. Alcoils has failed to establish a prima facie case concerning its relationship to Universal's property.

### 2. Identification of obsolescence factors

■■■ Alcoils finally argues that the State Board incorrectly denied its request for a 10% obsolescence depreciation after Alcoils allegedly identified forms of functional obsolescence present in its building. In its final assessment determination, the State Board did not grant any obsolescence to the subject property. (Resp't. Ex. B.) Functional obsolescence is defined as either something that buyers are unwilling to pay for or a deficiency that causes the property to lose value when compared to a more modern replacement. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1 (1992) (codified in present form at *id.,* r. 2.2–10–7(1996)); *see also* Michael D. Larson, *Identifying, Measuring and Treating Functional Obsolescence in an Appraisal,*

802

10 J. PROP. TAX MGMT. 42, 44 (1999). Examples of functional obsolescence include inadequate parking, excessive or deficient floor load capacity and poor proportion of office, rental or manufacturing, and warehouse space. *See* IND. ADMIN. CODE tit. 50, r. 2.1–5–1.

In the present case, Alcoils identified that its truck docks were in need of relocation and that its building suffers from excessive floor loads. (Trial Tr. at 37–38; 40.) Alcoils, though, failed to quantify the reasons for such obsolescence. The Court notes that this case is pre-*Clark*; *See Clark*, 694 N.E.2d at 1241. However, this does not excuse the fact that Alcoils' effort to identify obsolescence factors both at the administrative and trial levels was half-hearted. *See id.* (noting that taxpayer made a half-hearted case at the administrative level). Despite this poor showing, the Court finds that Alcoils has identified the forms of functional obsolescence its building suffers and is thus entitled to a remand on this issue. Upon remand, Alcoils will be required to identify, quantify and support its determination of functional obsolescence with probative evidence. *See id.* The State Board will then be required to deal with Alcoils' evidence in a meaningful manner. *See Loveless Const. Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1049 (Ind.Tax Ct.1998).

## CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the State Board in Cause No. 49T10–9606–TA–69. The Court further AFFIRMS in part, REVERSES in part and REMANDS the State Board's final determination in Cause No. 49T10–9606–TA–71 for further proceedings consistent with this opinion.