**COMPONX, INC., Petitioner,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9607–TA–00076.**

Tax Court of Indiana.

Aug. 7, 1997.

 

John R. Rumple, Sharpnack, Bigley, David & Rumple, Columbus, for Petitioner.

Jeffrey A. Modisett, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Componx, Inc. (Componx) appeals the State Board of Tax Commissioners' (State Board) final determination that assessed their building for the March 1, 1993 assessment date. Componx raises two issues on appeal:

I. Whether the State Board properly denied the application of Instruction Bulletin 91–8 to Componx's building.

II. Whether the State Board properly calculated the square footage of Componx's building.

The Court holds that the State Board's denial of the Instructional Bulletin "kit" adjustment was arbitrary, capricious, and unsupported by substantial evidence, and that the square footage of the mezzanine is unsupported by the evidence. This Court remands the matter to the State Board.

## FACTS AND PROCEDURAL HISTORY

Componx's building was valued for the March 1, 1993 assessment under the GCI–Light Warehouse model, but was not given the type of "kit" building adjustment described in Bulletins 91–8 and 92–1. Componx disagreed with this assessment and appealed by filing a Form 131 Petition for Review with the Washington County Board of Review. Componx's main claim was that the building should have been classified as an economy "kit" building and received the reduction in base rate. The County denied the Petition, and Componx subsequently appealed to the State Board.

The State Board also denied the petition for the "kit" adjustment. It based its denial on the fact that Componx's building had slight variations from the basic "kit" building. Componx, on the other hand, claims that although its building may vary somewhat from the classic "kit" model, these slight variations in design are not enough to completely disqualify it from receiving the

reduction. Instead, Componx argues that the modifications can be accounted for by an increase in grade factor. In essence, Componx asserts that the building is still of the "low cost economical version" that would qualify it for the 50% reduction in base rate.

In addition to denying Componx's petition for a "kit" adjustment, the State Board also found that the second floor of Componx's building was a mezzanine, and the building was of mixed use—29% office space and 71% light warehouse. Componx contends that the calculations of the square footage made by the State Board pertaining to these new findings were in error. Additional facts will be provided as needed.

### STANDARD OF REVIEW

■■■ State Board determinations are accorded great deference when the Board is acting within the scope of its authority. *Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113, 1114 (Ind.Tax Ct.1997). Therefore, a final determination made by the State Board will only be reversed if it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary or capricious. *Id.*

### DISCUSSION AND ANALYSIS

#### I.　Bulletin 91–8

Due to the fact that not all pre-engineered "kit" buildings are eligible for the 50% reduction in base rate, the State Board issued Bulletins 91–8 and 92–1 in order to give assessors guidance as to which buildings should receive the reduction. Bulletin 91–8 outlines in detail the different variations of "kit" buildings and which deviations from the basic "kit" model can cause buildings to be disqualified from the 50% reduction in base rate.

■■■ According to the State Board's final assessment, Componx's building was not eligible to receive the "kit" building adjustment. Like any party appealing an administrative decision, Componx has the burden of proving that this denial by the State Board was incorrect. *Herb v. State Board of Tax Comm'rs,* 656 N.E.2d 890, 893 (Ind.Tax Ct.1995). By comparing the features of the

Componx building with those that are listed in the Bulletin, Componx has shown that the State Board's decision to deny the adjustment was unsupported by substantial evidence.

The State Board's main justification for disallowing the "kit" adjustment for Componx's building rested on the fact that the thickness of the hard steel used in the support system was ⁹⁄₁₆ of an inch. It argued that such a thickness in hard steel was substantial enough to disqualify the building from receiving the reduction in base rate. However, undisputed testimony at trial by the taxpayer's witness revealed that ⁹⁄₁₆ is actually very lightweight. Tr. at 18. The witness pointed out that the presence of the supporting round posts in the center of the building would not be necessary if the hard steel was of adequate thickness. Therefore, the hard steel support system was actually quite thin and only able to withstand minimal load tolerances. Tr. at 18.

Not only is the support system the Componx building only ⁹⁄₁₆-inch thick, it is also the type of system that Bulletin 91–8 describes as used most prominently in buildings that qualify for the "kit" adjustment. The Bulletin issued by the State Board explains that "[t]he key element in identifying this low cost economical 'kit-type' structure is the type of interior column and roof beam support. Understanding the correlation between cost and strength in the type of column or beam being used in the structure is essential in identifying a qualifying structure." Instructional Bulletin 91–8 at 4.

Componx's support system, the "cold form open cee channel system," is made from light weight steel. The system derives its support from the "C" shape of the beams. In addition to having an "open cee channel support system," Componx's building also has steel pole columns that are placed 25 feet apart. These type of columns are described in Bulletin 91–8 as a low cost way of supporting the roof beam system when used in conjunction with cee columns. *Id.* at 5.

Based on the support system that the Componx building uses, it clearly fits within the parameters of the "kit" building adjust-

ment. However, the building possesses even more characteristics that are indicative of the type of building that qualifies for the 50% adjustment. *Id.* at 6. Trial testimony revealed that Componx's building included: standard "x" bracing, 18 feet eave height, 25 feet equally spaced bay spacing, and a low pitched roof. Tr. at 19. All of this evidence was presented at trial by Componx with no evidence to the contrary offered by the State Board.

[redacted] By meeting its burden of proof, Componx placed the burden of going forward to show that the determination was correct on the State Board. *See Corey v. State Board of Tax Comm'rs,* 674 N.E.2d 1062, 1066 (Ind.Tax Ct.1997). The State Board argued that because Componx's building displayed a few additional features, it could completely disallow the exemption. This reasoning may be sound if the building in question displayed such extant characteristics that the structure could no longer be considered economical, but Componx's building was only enhanced to a minimum degree. Bulletin 91–8 states that:

> "[g]rade may also be increased to recognize minimal building feature options. Should a structure include a stone or masonry front, a plate glass front, ornate exterior, decorative trim, high quality interior trim, and/or variations in number of openings, a determination of the impact of these features options to the overall cost should be made. If the feature option only slightly impacts overall cost, an increase in grade factor could be made to compensate."

Instructional Bulletin 91–8 at 7. While the Componx building does in fact have a stone veneer front, several windows and doors in the front, and 3 large electric roll up doors in the rear, these variations in design do not completely disqualify the building for the adjustment. In fact, Componx's building has the support system that is most indicative of a qualifying "kit" structure. The slight additions to the basic "kit" model can be accounted for by simply raising the grade factor. This can be done because none of the variations effect the actual structure of the building itself. They are simply cosmetic features that enhance the buildings aesthetic value, not its structural integrity. Without evidence refuting Componx's claim, this Court finds that the State Board's failure to apply Bulletin 91–8 arbitrary and unsupported by substantial evidence.

## II. Square Footage

Componx contends that the square footage used to determine its assessment was incorrect. The State Board found the mezzanine of the building to contain 4080 square feet, while Componx maintains that the area does not measure more than 2880 square feet.

At trial, Componx's witness testified that there must have been an error in calculation because the square footage of the mezzanine could not possibly be twice as much as that of the first floor area directly below it. Tr. at 11. In addition, the State Board's hearing officer testified that he measured the area of the mezzanine by himself, and that he was not confident that he had done so correctly. Tr. at 59. He even went so far as to say that he did not "recollect [the area] being quite that large," and that he "may have made a mathematical error in the multiplication." Tr. at 59.

[redacted] On this issue, the State Board's own evidence actually supports Componx's contention that the mezzanine was measured improperly. Therefore, the final determination as to the square footage of the mezzanine is not supported by the evidence. A new measurement of the area should be made to determine the correct square footage.

## CONCLUSION

On the issue of the "kit" adjustment and the application of Bulletin 91–8, the State Board's decision is REVERSED and the case is REMANDED to the State Board for further review consistent with this opinion. In regards to Componx's claim that the State Board incorrectly measured the square footage of the mezzanine, this case is REMANDED to the State Board so that an accurate measurement of the area can be made.