Donald G. MORRIS, Petitioner,

v.

**STATE BOARD OF TAX COMMISSIONERS,**
Respondent.

No. 49T10–9605–TA–00055.

Tax Court of Indiana.

July 12, 1999.

John R. Rumple, Sharpnack Bigley David & Rumple, Columbus, Indiana, Attorney for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Donald G. Morris appeals a final determination of the State Board of Tax Commissioners (State Board) fixing the assessed value of his real property as of March 1, 1993. Morris raises one issue for the Court's determination: whether the State Board erred in concluding that the subject improvement did not qualify for a kit adjustment.

## FACTS AND PROCEDURAL HISTORY

The subject improvement is an automobile showroom and service center located in Seymour. On November 8, 1993, Morris filed a Form 130 Petition for Review of Assessment with the Jackson County Board of Review (BOR) alleging that the subject improvement was a kit building and therefore qualified for a kit adjustment. The BOR disagreed and denied Morris' Form 130 petition. On November 3, 1994, Morris filed a Form 131 Petition for Review of Assessment with the State Board. Once again, Morris alleged that the subject improvement was a kit building. On March 3, 1996, an administrative hearing was held on Morris' Form 131 petition before Ms. Kay Schwade, a State Board hearing officer. This hearing included an inspection of the subject improvement. On May 17, 1996, the State Board issued its final

determination in this matter. In that final determination, the State Board denied the kit adjustment, lowered the grade of the subject improvement, concluded that the subject improvement should be depreciated according to the 40–year Life Expectancy Table and adjusted the Perimeter to Area Ratio (PAR). On May 23, 1996, Morris filed this original tax appeal, and on February 24, 1997, the parties tried this cause before the Court. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The State Board is afforded great deference when it acts within the scope of its authority. *See King Indus. Corp. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 338, 339 (Ind. Tax Ct.1998). Accordingly, the Court will only reverse a State Board final determination where that determination is unsupported by substantial evidence, is arbitrary and capricious, constitutes an abuse of discretion, or exceeds statutory authority. *See id.*

### Discussion

In 1991, the State Board amended the regulations governing the 1989 general reassessment to include a 50% reduction in base price for "pre-engineered kit-type structure[s]." IND. ADMIN. CODE tit. 50, r. 2.1–4–5 Schedules A.1 and A.2 (1992) (codified in present form at *id.* r. 2.2–11–6 Schedule A.4 (1996)); *Barker v. State Bd. of Tax Comm'rs,* 712 N.E.2d 563, slip op. at 3 (Ind. Tax Ct.1999); *Barth, Inc. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 800, 803 (Ind. Tax Ct.), *reh'g denied,* 705 N.E.2d 1084 (Ind. Tax Ct.1998); *King Indus. Corp.,* 699 N.E.2d at 339; *Bock Prods., Inc. v. State Bd. of Tax Comm'rs,* 683 N.E.2d 1368, 1372 (Ind. Tax Ct.1997); *Mahan v. State Bd. of Tax Comm'rs,* 622 N.E.2d 1058, 1063 (Ind. Tax Ct.1993). The base price reduction was to account for the lower costs of construction associated with kit buildings, *see King Indus. Corp.,* 699 N.E.2d at 339, and, as the State

Board notes in its brief, was in response to an inability of local assessing officials to properly assess kit buildings by using the pre-existing cost schedules and grade adjustments.[1] *See Barker,* 712 N.E.2d 563, slip op. at 3–4. Unfortunately, the amendments to the regulations themselves did not provide any guidance on what constituted a "kit-type structure." However, soon after the amendments went into effect, the State Board issued a memorandum to all assessing officials, which gave a limited explanation of how the kit adjustment was to be applied. Memorandum from State Board of Tax Commissioners (Feb. 22, 1991). Later that year, the State Board issued Instructional Bulletin 91–8 to further instruct assessing officials on how to apply the kit adjustment amendments. Instructional Bulletin 91–8 provides examples of kit buildings and outlines the characteristics of kit buildings, e.g., Cold Cee Channel wall supports, X bracing, metal or steel exterior skin, and round steel columns. *See King Indus. Corp.,* 699 N.E.2d at 339–41 (describing Instructional Bulletin 91–8). Instructional Bulletin 91–8 also provides illustrations of the characteristics of kit buildings and provides photographs of qualifying and non-qualifying structures.

Morris contends that the subject improvement is a kit building and therefore should be granted the 50% reduction in base price. In support of that contention, Morris submitted an affidavit from a builder stating that STRAN is one of the leading manufacturers of pre-engineered buildings and that the subject improvement is a STRAN pre-engineered steel framed building. *See King Indus. Corp.,* 699 N.E.2d at 341. Additionally, Morris offered the testimony of Mr. Milo Smith, a property tax consultant. Mr. Smith's testimony indicated that the subject improvement was steel skinned, had steel framing, steel columns and Cee Channel supports. (Trial Tr. 14–16).

In his testimony, Mr. Smith also addressed some other features possessed by the subject improvement.[2] Mr. Smith stated that sub-

---

1. For an explanation of how improvements are graded, see *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1116–18 (Ind. Tax Ct.1998), *review denied.*

2. Mr. Smith also provided testimony concerning how much these features added to the reproduction cost of the subject improvement. (Trial Tr. at 25–28). Mr. Smith did so by using the Unit-

ject improvement possessed non-load bearing brick walls in the front of the building. (Trial Tr. at 12). Mr. Smith also testified that the subject improvement contained plate glass windows and a non-load bearing four foot concrete block wall surrounding the portion of the subject improvement used as a service area. (Trial Tr. at 14–15). Mr. Smith also noted that the steel structural supports, rather than resting on top of the concrete block wall, rested on the floor of the subject improvement. (Trial Tr. at 15).

■ The State Board did not contest this evidence. However, the State Board relied on the deviations from the basic kit model addressed by Mr. Smith to deny the kit adjustment in this case. In its final determination, the State Board stated:

Upon visual inspection, the subject at issue displayed substantial modifications such as brick walls, large glass windows, and [a] four foot concrete wall surrounding the structure. While the building is pre-engineered, given the modifications made, the building does not qualify for the 50% base price adjustment. No change is made to the assessment due to this issue.

(State Bd. Final Determination ¶ 1). At trial, the State Board hearing officer repeated this rationale for denying the kit adjustment and also offered some additional reasons[3] why the denial of the kit adjustment was proper in this case. She testified that the subject improvement had a number of doors and that it had a number of cuts in the building due to the different widths of the showroom area and the service area. (Trial Tr. at 36–38).

In drafting Instructional Bulletin 91–8, the State Board realized that not all kit buildings would conform perfectly to the basic kit model. Therefore, Instructional Bulletin 91–8 allows improvements to deviate somewhat

from the basic kit model and still qualify for the adjustment. See Componx, Inc. v. State Bd. of Tax Comm'rs, 683 N.E.2d 1372, 1374 (Ind. Tax Ct.1997). Instructional Bulletin 91–8 allows improvements that have "minimal feature option[s such as] a stone or masonry front, . . . a plate glass front, . . . and/or variations in the number of openings" to receive the kit adjustment. Instructional Bulletin 91–8 at 7. Instructional Bulletin 91–8 also allows improvements that have higher quality structural support systems to qualify for the kit adjustment. See King Indus. Corp., 699 N.E.2d at 342 n. 11; Instructional Bulletin 91–8 at 7. According to Instructional Bulletin 91–8, these deviations from the basic kit model can be accounted for by increasing the grade of the improvement being assessed. See Componx, Inc., 683 N.E.2d at 1375; Instructional Bulletin 91–8 at 7. However, where deviations from the basic kit model are such that the improvement is no longer "economical," the improvement does not qualify for the kit adjustment. See Barker, 712 N.E.2d 563, slip op. at 6; King Indus. Corp., 699 N.E.2d at 340 n. 6; Componx, Inc., 683 N.E.2d at 1375; Instructional Bulletin 91–8 at 7.

■ Instructional Bulletin 91–8, therefore, directs the inquiry to a quantification of how much a deviation from the basic kit model increases the cost of the improvement being assessed. Barker, 712 N.E.2d 563, slip op. at 16. As a result, under Instructional Bulletin 91–8, when faced with evidence demonstrating that an improvement qualifies for the kit adjustment, the State Board cannot merely point to a deviation from the basic kit model and use that deviation to justify the denial of a kit adjustment, unless the deviation specifically disqualifies the improvement

---

in–Place Cost Tables provided in the regulations. See IND. ADMIN. CODE tit. 50, r. 2.1–4–10 (1992) (codified in present form at id. r. 2.2–15–1 (1996)). Recently, the Court has noted the possibility of using the Unit–in–Place Cost Tables in arriving in accurate assessments. See Barker, 712 N.E.2d 563, slip op. at 13 n. 20; White Swan Realty v. State Bd. of Tax Comm'rs, 712 N.E.2d 555, slip op. at 5 n. 5 (Ind. Tax Ct.1999), petition for review filed June 23, 1999; Whitley Prods., Inc., 704 N.E.2d at 1117.

3. These reasons should have been articulated in the State Board's written findings rather than raised for the first time in this original tax appeal. See Barker, 712 N.E.2d 563, slip op. at 10 n. 15. However, because Morris did not object at trial, the Court will treat these factual observations by the hearing officer as if they were part of the State Board's final determination. See Loveless Constr. Co. v. State Bd. of Tax Comm'rs, 695 N.E.2d 1045, 1050 n. 8 (Ind. Tax Ct.1998), review denied.

for the kit adjustment or the deviation increases the cost of the improvement so that the improvement is no longer economical. *See id.* at 14–16. In addition, any determination that a deviation makes an improvement no longer economical will necessarily involve a quantification of the deviation's effect on the cost of the improvement. *See id.* at 17 (citing *King Indus. Corp.*, 699 N.E.2d at 342).

■ The issue in this case is whether the subject improvement's deviations from the basic kit model disqualify the subject improvement from receiving a kit adjustment. In its final determination, the State Board identified "substantial modifications" made to the subject improvement. These modifications include brick walls (in the front of the subject improvement), plate windows and a four foot concrete wall surrounding the structure. As for the brick walls and plate windows, Instructional Bulletin 91–8 specifically states that these features may be taken into account by simply raising the grade of the improvement being assessed.[4] *Componx,* 683 N.E.2d at 1375. Therefore, the State Board's final determination cannot be upheld on the basis that the subject improvement has brick walls and plate glass windows. As for the concrete block wall, the Court has specifically held that a small concrete block wall surrounding an improvement that would otherwise qualify for the kit adjustment does not disqualify that improvement for the kit adjustment. *See Barker,* 712 N.E.2d 563, slip op. at 12–13.

■ As noted above, the State Board hearing officer identified additional reasons for the denial of the kit adjustment. She mentioned the fact that the subject improvement had additional doors and that it had additional cuts due to the different widths of the showroom and the service area. An examination of Instructional Bulletin 91–8

shows that these features do not disqualify an improvement for a kit adjustment. Instructional Bulletin 91–8 contains illustrations of qualifying kit buildings. Instructional Bulletin 91–8 Attachment B. One of these qualifying structures contains additional doors. Therefore, the doors contained by the subject improvement do not disqualify it from receiving the kit adjustment. The same goes for the increased number of cuts in the subject improvement. Instructional Bulletin 91–8 contains an illustration showing the "basic widespan components" of a kit building. Instructional Bulletin 91–8 at 6. This illustration shows a kit building with increased cuts due to the building having different widths. As a result, the kit adjustment cannot be denied on this basis.

Because none of the deviations identified by the State Board automatically disqualify the subject improvement from receiving the kit adjustment, the State Board was required to do more than simply point to those deviations to support its final determination in this case. *See Barker,* 712 N.E.2d 563, slip op. at 15–16. Rather, the State Board was required to quantify the effect of the subject improvement's deviations from the basic kit model on the subject improvement's reproduction cost to determine whether those deviations rendered the subject improvement no longer economical. *See id.* at 16. The State Board did not undertake this required inquiry in arriving at its final determination and therefore abused its discretion.[5] *See id.* at 16–17. Consequently, the State Board's final determination must be reversed and remanded.

■ In arriving at this conclusion, the Court is not unaware that the State Board, in its review of the assessment of the subject improvement, lowered the grade of the subject improvement to C–1 to "reflect[ ] the variations from the models provided." (State

---

4. Instructional Bulletin 91–8 refers to stone or masonry fronts. Brick is included in the term masonry. *See* IND. ADMIN. CODE tit. 50, r. 2.1–4–10(7.0).

5. The State Board hearing officer's testimony on this point is particularly illuminating:

Q: (By the Court) "[H]ow did you determine whether the features went from a slight increase to an increase that would no longer make the structure economical?"
A: (By the State Board hearing officer) "I didn't calculate the difference in cost. That's my opinion."
(Trial Tr. at 56).

Bd. Final Determination ¶ 3). This cosmetic reduction cannot save the fatally deficient State Board final determination. First of all, there is absolutely no evidence in the record to support the State Board's decision ˙to quantify the effect of the deviations of the subject improvement from the models (GCM Auto Service Center and GCM Auto Sales, *see* IND. ADMIN. CODE tit. 50, r. 2.1–4–7(a) (1992) (codified in present form at *id.* r. 2.2–11–1(4), –(5) (1996))) used to assess the subject. improvement by assigning the C–1 grade, as opposed to any other grade, to the subject improvement.[6] *See King Indus. Corp.,* 699 N.E.2d at 342; *Zakutansky v. State Bd. of Tax Comm'rs,* 696 N.E.2d 494, 496 (Ind. Tax Ct.1998); *see also Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1240 (Ind. Tax Ct.1998). Rather than undertaking this inquiry, the State Board merely asserted its conclusion that C–1 was the appropriate grade. Once again, the State Board is reminded that conclusory statements, standing alone, are insufficient to support a State Board final determination. *See Clark,* 694 N.E.2d at 1237. Moreover, the State Board is not permitted to use a grade adjustment in lieu of a kit adjustment. *See Barth, Inc.,* 699 N.E.2d at 805 ("Under the State Board regulations, a building must be given a kit adjustment if it qualifies for that adjustment.") (citations omitted). Therefore, even if the State Board had supported its determination of the grade of the subject improvement with something more than the mere announcement of its conclusion on that issue, reversal would still be required.[7]

As stated above, the State Board failed to examine whether the subject improvement's deviations from the basic kit model rendered the subject improvement uneconomical so as to disqualify it from receiving the kit adjustment. This requires reversal. On remand, the State Board could then examine the subject improvement's deviations from the basic kit model, quantify their effect on the subject improvement's reproduction cost, and determine whether they make ˙the subject improvement uneconomical. This approach has been followed in the recent past, *see Barker,* 712 N.E.2d 563, slip op. at 17, and this is the approach dictated by a strict reading of ˙Instructional Bulletin 91–8.[8]

However, ˙this approach could present problems because Instructional Bulletin 91–8 lacks adequate guidance on determining what is economical and ˙what is not. *See id.* at 6. As a result, it will be difficult to resolve this dispute , on remand because there are no standards by ˙which to resolve the dispute. Then, if the decision is adverse to Morris, it is likely that the Court will see ˙this case again—only this time, the Court would have to determine where the line separating economical kit buildings from non-economical pre-engineered buildings lies. With little or no guidance on the issue, it is difficult to see how the Court's decision could be anything but ad hoc.

 As can be readily observed, this is a very unsatisfactory .possibility. However, in this particular case, there is a solution. As noted above, Morris made a detailed factual presentation tending to show that the subject improvement was a kit building, thereby discharging his burden of coming forward with , probative evidence on the issue.: *See Whitley' Prods., Inc.,* 704 N.E.2d at 1121; *King Indus. Corp.,* 699 N.E.2d at .343. The burden then shifted to the State Board to rebut Morris' evidence. *See· Clark,* 694 N.E.2d at · 1234–35 (discussing State Board's burden where taxpayer makes "prima facie case"). The State Board did not dispute Morris' evidence; rather, the State Board identified some features that, in the State Board's view,

---

6. In Indiana, improvements are assessed according to models, which are presumed to have the same features as the improvement being assessed. *See Wareco Enters.,* 689 N.E.2d 1299, 1302 (Ind. Tax Ct.1997). However, most improvements will vary somewhat from the model being used to assess them. *See Clark,* 694 N.E.2d at 1237 n. 9. As a result, the State Board has provided cost schedules from which various components of an improvement can be calculated. *See Wareco Enters.,* 689 N.E.2d at 1302.

7. The Court notes that as a practical matter a taxpayer would not care if the proper assessment were arrived at by denying the kit adjustment and adjusting the grade. *See King Indus. Corp.,* 699 N.E.2d at 341.

8. This is so because, under Instructional Bulletin 91–8, the effect of the additional features on the reproduction cost of the subject improvement determines the qualification of the subject improvement for the kit adjustment.

disqualified the subject improvement from receiving the kit adjustment. But the State Board was incorrect; the identified features did not disqualify the subject improvement from receiving the kit adjustment. As a result, the undisputed evidence in this case shows that the subject improvement is a kit building that has some additional features. The only logical conclusion from this undisputed evidence is that the best way to assess the subject improvement is to assess the property as a kit building and then add the reproduction costs of the additional features (i.e., what Morris attempted to do).

Consequently, in light of the fact that the evidence was undisputed on the point and that the only logical conclusion from that undisputed evidence was that the best way to assess the subject improvement is to assess it as a kit building and subsequently adjust the assessment to account for the reproduction costs of the additional features, the Court concludes that, on remand, the State Board must do so. In addition, when adjusting for the additional features, the State Board must quantify the effect of these additional features on the reproduction cost of the subject improvement and support that quantification with substantial evidence. Furthermore, because the application of the kit adjustment in this case may create an error in the C–1 grade assigned to the subject improvement, the State Board may alter the grade of the subject improvement. *See Barth, Inc.*, 699 N.E.2d at 807. However, any adjustment of the grade (other than to C) must be supported by substantial evidence and be accompanied by detailed written findings explaining the State Board's calculations. *See King Indus. Corp.*, 699 N.E.2d at 343.

Ordering the State Board to assess the property as a kit building creates some tension with Instructional Bulletin 91–8, which seems to require an evaluation of the reproduction costs of the additional features *before* the application of the kit adjustment. However, a close examination of Instructional Bulletin 91–8 reveals that any tension is easily resolved.

 The purpose of Instructional Bulletin 91–8 is to provide guidance to assessors in distinguishing kit buildings from other pre-engineered improvements. *See Componx, Inc.*, 683 N.E.2d at 1374. As a result, it speaks in terms of whether an improvement qualifies or does not qualify for the kit adjustment. However, Instructional Bulletin 91–8 does not forbid using the kit adjustment as a tool to arrive at a proper assessment.[9] Consequently, an assessor may assess an improvement's kit-like features separately from its additional features when determining the assessed value of that improvement, just as an assessor may assess any improvement by conceptually breaking the improvement into parts and assessing those parts separately. In other words, Instructional Bulletin 91–8 does not mandate that improvements alleged to qualify for the kit adjustment must necessarily be assessed as a whole, and the fact that an improvement is not, in a strict sense, a kit building does not mean that it is inappropriate to assess it as if it were a kit building in order to arrive at the most accurate assessment.[10] *See King Indus. Corp.*, 699 N.E.2d at 340 n. 3 ("[A]rriving at the correct final assessed value should be the target at which we aim.").

## CONCLUSION

The State Board's final determination is REVERSED .and REMANDED for consideration not inconsistent with this opinion.

---

9. The Court notes that the State Board has issued new regulations governing kit buildings. *See* IND. ADMIN. CODE tit. 50, r. 2.2–11–6 Schedule A.4; 2.2–10–6.1(a)(1)(4)(D) (1996). The Court expresses no view on how the present case would be decided under the current regulations.

10. However, the converse is not true. If a building qualifies for the kit adjustment, the kit adjustment must be applied.