**COMPONX, INC, Petitioner,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS, Respondent.**

**No. 49T10–9801–TA–00010.**

Tax Court of Indiana.

Dec. 22, 2000.

---

Timothy J. Vrana, Sharpnack, Bigley, David & Rumple, Columbus, Indiana, Attorney for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Componx, Inc. (Componx) appeals the State Board of Tax Commissioners' (State Board) amended final determination that assessed its building as of the March 1, 1993 assessment date. Componx presents the following issue for this Court's review on appeal: whether the interior components of a building should be subtracted from the base price of the building before applying a kit building adjustment and then added back in at 100% value after the kit building adjustment has been applied.

## FACTS AND PROCEDURAL HISTORY

The present case returns to this Court following a remand to the State Board ordered by the Court on August 7, 1997. *See Componx, Inc. v. Indiana State Bd. of Tax Comm'rs*, 683 N.E.2d 1372 (Ind.Tax Ct.1997) (*Componx I*). Because only the final determination issued after the remand is at issue here, this Court will relate only the events subsequent to *Componx I*.

On December 3, 1997, the State Board issued an amended final determination. Before applying the kit building adjustment to Componx's building, the State Board subtracted out the components, then added them back in at 100% after the application of the adjustment. On January 12, 1998, Componx filed an original tax appeal with this Court appealing the State Board's method of applying the kit build-

ing adjustment. Additional facts will be provided as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court gives final determinations of the State Board great deference when the State Board acts within the scope of its authority. *Freudenberg–NOK General Partnership v. State Bd. of Tax Comm'rs,* 715 N.E.2d 1026, 1028–29 (Ind. Tax Ct.1999). Accordingly, this Court reverses final determinations of the State Board only when they are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* at 1029.

### Discussion

■ The issue here is whether the interior components of a building should be subtracted from the base price of the building before applying a kit building adjustment and added back in at 100% value after the kit building adjustment has been applied. Componx argues that the State Board's use of Instructional Bulletin 92–1 when it applied Componx's kit building adjustment was erroneous. Rather, Componx asserts that the State Board should have used Instructional Bulletin 91–8 to apply its kit building adjustment. Componx contends that Instructional Bulletin 92–1 and Instructional Bulletin 91–8 are in direct conflict regarding how the components should be handled and that 91–8 should be used because it is a sound legal rule. More specifically, Componx argues that the State Board should not have subtracted out the components before applying the kit building adjustment to its

building and added them back in at 100% thereafter.[1] The State Board argues that Instructional Bulletin 92–1 should be followed because it is a refinement of Instructional Bulletin 91–8 and is a more recent and specific bulletin.

In February of 1991, the State Board amended its regulations to include a 50% reduction in the base rate for certain light pre-engineered or kit-type buildings. (State Bd. of Tax Commr's February 22, 1991, Mem.) *See also Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1121 (Ind.Tax Ct.1998), *review denied;* IND.ADMIN.CODE tit. 50, r. 2.1–4–5 (Schedules A.1 and A.2)(1992)[2] (codified in present form at *id.,* r. 2.2–11–6 (Schedule A.4)(1996)). Thereafter, on October 1, 1991, the State Board issued Instructional Bulletin 91–8 to provide guidance to assessors in determining which light pre-engineered buildings qualified for the reduction. Instructional Bulletin 91–8; *See also Componx,* 683 N.E.2d at 1374. Instructional Bulletin 91–8 includes a sample of a property card used to apply the kit building adjustment. On the sample card, the 50% reduction is applied to the base price of the unit, including its interior components. Instructional Bulletin 91–8 at 13. In dealing with base price component adjustments from Schedule C of the General Commercial and Industrial Cost Schedules, Instructional Bulletin 91–8 states that when adjusting for components that are not present in the kit building being assessed, but are included in the base rate, the rate for the component taken from schedule C must be reduced by 50% before it is taken out of the base price after the 50% reduction is applied to the entire

---

1. Componx also argues that this Court mandated that the State Board use Instructional Bulletin 91–8 in the *Componx I,* 683 N.E.2d at 1374–75. However, the method of calculating the kit building adjustment was not at issue in the previous appeal. *See id.*

2. The regulations state "Deduct 50% of base price (1st floor) for pre-engineered kit-type

structure." IND.ADMIN.CODE tit. 50, r. 2.1–4–5 (Schedules A.1 and A.2). With regard to Schedule A.2 (the GCI Base Prices), only light warehouse, light manufacturing, industrial office, and research/development models listed therein as indicated by asterisks appear to be eligible for the adjustment if they meet the criteria.

building including components.[3] Instructional Bulletin 91–8 at 3. However, Instructional Bulletin 91–8 also states that the cost for the interior finish components should not be reduced by 50%.[4] Instructional Bulletin 91–8 at 2–3. Rather, when the interior finish components are reduced by 50%, an increase in grade is necessary to off-set the 50% reduction of the interior finish portion of the base price. Instructional Bulletin 91–8 at 3. Thus, it appears that the 50% reduction does not apply to the interior finish components, because, after the 50% reduction is taken, the instruction is to compensate for it through the use of grade. However, this Court notes that the example given in Instructional Bulletin 91–8 does not show how the compensation by grade is to be calculated as it merely demonstrates how to adjust for a component that does not exist in a given building.[5] Instructional Bulletin 91–8 at 3.

On August 28, 1992, the State Board issued Instructional Bulletin 92–1, which was issued to "provide guidance in handling appeals on turkey confinement and pre-engineered, predesigned wooden pole and steel frame buildings." As this Court has indicated previously, Instructional Bulletin 92–1 was issued to clear up confusion and disagreements between the local assessing officials and taxpayers regarding the application of Instructional Bulletin 91–8. *Barth, Inc. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 800, 804 (Ind.Tax Ct.1998), *reh'g denied*. On a sample attached to 92–1, which calculates the kit adjustment for a light manufacturing model, costs of interior components (walls, partitions, lighting, and heating) are subtracted from the Schedule A.2 base price to ascertain the price of the shell of the building. Instructional Bulletin 92–1 at 3. Then, the 50% kit building reduction was applied only to the price of the shell of the building, not to the components. Instructional Bulletin 92–1 at 3. After the reduction was applied to the shell of the building, the components were added back in at 100% value.[6] Instructional Bulletin 92–1 at 3.

**3.** Instructional Bulletin 91–8 provides in relevant part:

If there is an adjustment needed from Schedule C to reduce for a component *included in the structure's base price, the adjustment rate from Schedule C would also need to be reduced by 50%. As is explained in the "Grade" section above, the reduced amount of interior finish will then be recovered by an increase in grade.*
Instructional Bulletin 91–8 at 3 (emphasis added).

**4.** In explaining "Grade" in the section referenced in footnote three *supra*, Instructional Bulletin 91–8 provides:

It is important to understand when pricing from a use type that has the cost for interior finish already built into the base price, and *when the 50% reduction of the base price occurs, the portion of that base price that accounts for interior finish is distorted.* Although a 50% reduction in the base price is necessary to reflect the true reproduction cost of this type of building, *the cost for that interior finish should not be reduced.* When this situation occurs, an *increase in grade is necessary to off-set the 50% reduction of the interior finish portion of the base price.* Rarely will buildings in this classification exceed a "B" grade when an increase in grade is made to restore cost of interior finish.
Instructional Bulletin 91–8 at 2–3 (emphasis added).

**5.** The examples provides:

If the use type model's base price includes for partitions, and the building being assessed does not have partitions, the rate taken from Schedule C to adjust for no partitions must be reduced by 50%. This value is then placed on the pricing ladder and will be reduced from the base price when the property record card is calculated. This will then proportionately off-set the cost for no partitions.
Instructional Bulletin 91–8 at 3.

**6.** This Court notes that in Instructional Bulletin 92–1, to adjust for components that were not present in the building, but were included in the base price, the costs of the components (partitions) were subtracted from the total interior components that were removed before the 50% reduction. Instructional Bulletin 92–1 at 3. As such, the components that were not present were subtracted at 100% value. Then, only the components that were present in the building were added back in at 100%. *Id.*

Componx argues that the State Board erred in following the sample in Instructional Bulletin 92–1 when it applied the kit building adjustment to its building. This Court disagrees. For the reasons discussed in detail below, this Court concludes that the State Tax Board's issuance and use of Instructional Bulletin 92–1 is neither an abuse of discretion nor arbitrary and capricious.

■■■ First, Instructional Bulletin 92–1 is not inconsistent with IND.ADMIN.CODE tit. 50, r. 2.1–4–5 which simply provides "[d]educt 50% of base price (1st floor) for pre-engineered kit-type structure." When the meaning of an administrative regulation is in question, the interpretation of the administrative agency is given great weight unless the agency's interpretation would be inconsistent with the regulation itself. *State Bd. of Tax Comm'rs v. Two Market Square Assocs. Ltd. Partnership,* 679 N.E.2d 882, 886 (Ind.1997); *Indiana Dep't of State Revenue v. Bulkmatic Transp. Co.,* 648 N.E.2d 1156, 1158 (Ind.1995). The State Board may issue instructional bulletins to provide instructions to assessing officials.[7] IND.ADMIN.CODE tit. 50, r. 4.2–1–5 (1992) (codified in present form at *Id.* (1996)). *See also Sterling Mgmt.— Orchard Ridge Apartments v. State Bd. of Tax Comm'rs,* 730 N.E.2d 828, 837 n. 7 (Ind.Tax Ct.2000). Here, the State Board instructs assessing officials on what it deems to be the proper method of calculating the kit building adjustment in Instructional Bulletin 92–1. Nothing in IND.ADMIN.CODE tit. 50, r. 2.1–4–5 requires that

the interior components in a kit building be reduced by 50% then adjusted upward using grade to make up the reduction pursuant to Instructional Bulletin 91–8. The method of calculating the kit building adjustment set forth in Instructional Bulletin 92–1 is not in inconsistent with ADMIN.CODE tit. 50, r. 2.1–4–5.[8] Therefore, this Court gives weight to Instructional Bulletin 92–1.

■■■ Second, the rules of statutory construction demonstrate that Instructional Bulletin 92–1 should prevail. Administrative rules and regulations are subject to the same rules of statutory construction as statutes. *Western Select Props. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1073 (Ind.Tax Ct.1994). Instructional Bulletins hold a lofty position in property tax law. *Barth, Inc. v. State Bd. of Tax Comm'rs,* 705 N.E.2d 1084, 1089 (Ind.Tax Ct.1998). Although Instructional Bulletins are not regulations, they do carry weight and thus this Court uses the same analysis that it would if two regulations were in conflict. An established rule of statutory construction holds that where provisions of a statute conflict, the specific provision takes priority over the general provision. *Robinson v. Wroblewski,* 704 N.E.2d 467, 475 (Ind.1998). Moreover, if two statutes are inconsistent in any of their provisions, then the more recent statute will control and operate to repeal the former to the extent of the inconsistency. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh'g denied.* The State Board promulgated IND.ADMIN.CODE

---

7. This Court notes that IND.ADMIN.CODE tit. 50, r. 4.2–1–5 also states that "instructional bulletins will be effective for the year designated and will remain in effect for subsequent tax years unless specifically rescinded or revised by subsequent directives or instructional bulletins." While Instructional Bulletin 92–1 does not specifically rescind 91–8, the two are inconsistent in the manner that they handle the inclusion of the interior components (one takes them out and adds them back in at 100% while the other initially reduces them by 50% then adjusts the grade to make up for the reduction). However, both are consistent to the extent that neither Instructional Bulle-

tin allows the interior components to receive the 50% reduction. Pursuant to IND ADMIN.CODE tit. 50, r. 4.2–1–5 both are currently effective because the State Board did not specifically rescind or revise Instructional Bulletin 91–8 in Instructional Bulletin 92–1 as it should have. Therefore, this Court is left to determine which Bulletin represents the proper method of calculating the kit building adjustment. See *infra,* opinion at 446–447 for a discussion of statutory interpretation.

8. Instructional Bulletin 92–1 is also not inconsistent with IND.ADMIN.CODE tit. 50, r. 2.2–11–6 (Schedule A.4 GCK) (1996).

tit. 50, r. 2.1–4–5 and its most recent and specific interpretation of the regulation is via Instructional Bulletin 92–1. Because Instructional Bulletin 92–1 is more specific than is Instructional Bulletin 91–8, it must take priority over Instructional Bulletin 91–8. *See Robinson,* 704 N.E.2d at 475. In addition, because Instructional Bulletin 92–1 is more recent than Instructional Bulletin 91–8 and the provisions of each regarding the method to be used to calculate the kit building adjustment are to some extent inconsistent, Instructional Bulletin 92–1 must control and it operates to repeal 91–8 to the extent that the two are inconsistent. *See Althaus,* 615 N.E.2d at 444. Therefore, where in conflict, Instructional Bulletin 92–1 must prevail.

Third, there is evidence that the 50% kit building adjustment was meant to apply only to the shell of the building. Instructional Bulletin 91–8 sets forth several examples of common characteristics of kit buildings. These characteristics are descriptive of the shell of the kit building and not of its interior components. According to Instructional Bulletin 91–8, a key element in identifying kit buildings is the type of column and roof beam support used in the building. Instructional Bulletin 91–8 at 4. Some examples of characteristics of these column and roof beam systems include: Cold Form Cee Channel roof and wall supports, tapered columns, H columns, and steel pole (post) columns. *Id.* at 4–5. Instructional Bulletin 91–8 also provides assessors with "other identification clues" that a building is a kit building, including: X bracing, metal or steel exterior skin, steel purlins and girders that are normally 14 to 16 gauge, concrete floors that have minimal tolerances, evenly spaced vertical supports, and normal building widths ranging from 30 feet to 120 feet. *Id.* at 6. *See also King Indus. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 338, 339 (Ind.Tax Ct.1998). The features used to describe the kit building indicate that the adjustment is meant to be applied only to the shell of the building, not to its interior components.

Fourth, Instructional Bulletin 92–1 is more objective in its method calculating the kit building adjustment by removing components and adding them back in than is Instructional Bulletin 91–8. That is because Instructional Bulletin 91–8 adjusts for the reduction by using grade, a subjective method. When accounting for deviations from a model that have an effect on reproduction cost, the preferred method of accounting for the deviation is to use separate schedules that show the costs of certain components and features present in the model because this allows an assessor to adjust the base reproduction cost of the improvement objectively. *Whitley Prods.,* 704 N.E.2d at 1117; *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1236 n. 6 (Ind.Tax Ct.1998). Adjusting for an improvement's deviation from the model via an adjustment to the grade of the improvement requires the assessor's subjective judgment and where possible, that type of an adjustment should be avoided. *Whitley Prods.,* 704 N.E.2d at 1117. Instructional Bulletin 92–1 keeps with the principle that objective adjustments should be used whenever possible. Instructional Bulletin 92–1 utilizes Schedule C and the regulations clearly state that Schedule C "shows the cost of the interior and mechanical components included in the base rate (to facilitate deduction from the base rate where appropriate)." IND.ADMIN.CODE tit. 50, r. 2.1–4–3(c). In contrast, using the Instructional Bulletin 91–8 method, the assessor must make a subjective judgment in deciding how much to increase the grade to make up for the 50% reduction to the components. Consequently, the method of calculation described in Instructional Bulletin 92–1 is more objective and thus preferred over the method shown in Instructional Bulletin 91–8.

Finally, as this Court has indicated previously, Instructional Bulletin 92–1 was issued to clear up confusion and disagreements regarding the application of Instructional Bulletin 91–8. *See Barth,*

699 N.E.2d at 804 (stating "[a]s was foreseeable, taxpayers and local assessing officials did not always see eye-to-eye on whether a particular improvement qualified for the kit adjustment.... On August 28, 1992, the State Board issued Instructional Bulletin 92–1, which provides guidance on handling these petitions).

Because the State Board's interpretation of IND.ADMIN.CODE tit. 50, r. 2.1–4–5 via 92–1 is not inconsistent with the regulation itself, reflects the purpose of the kit building adjustment, and is the most recent, specific, and objective explanation by the State Board, this Court holds that the method of calculating the kit building adjustment therein is not arbitrary or capricious and is not an abuse of the State Board's discretion.

## CONCLUSION

For the foregoing reasons, the Court hereby AFFIRMS the State Board's final determination using Instructional Bulletin 92–1 to calculate Componx's kit building adjustment.